Thank you. May it please the court, Bruce Thomas on behalf of the family and estate of Savion Hall, the plaintiff below. I first this morning like to address our Monnell claim and then move to the deliberate indifference claim against Jailer Stickle. With regard to the our Monnell claim, the primary issue that's confronted by the panel in this case is whether Saluda's custom and policy is Midland County's custom and policy. The 6th, 7th, and 11th circuits would all hold that it is. They would hold that Midland County is responsible for its contractor's policy because Midland County has a non-delegable duty to provide health care for its detainees' serious medical needs and it can avoid that liability by contracting out a third party. So these circuits analyze the issue as one of a issue of delegation rather than responding out superior and the same result has been reached by at least two district courts in this circuit. The Kent v. Collin County case that we discussed at some length in our reply and the second Rodriguez v. Southern Health Partners case out of the Northern District by Judge Fitzwater emphasize the second case because the district court in our case cited only to the first Rodriguez case and we rely upon the second Rodriguez case. Normally it's the respondeat superior that's what we are all used to. Under what circumstances would the non-delegable duty not respondeat superior theory apply and is this some in run around respondeat superior that's going to be tried to adopt in many many capacities or is this limited to this medical provision? What can you help us? Yes well it's it's it's it's a concept that applies in many cases including the three circuit cases that I cited but the difference is no one is suggesting that that Midland County is responsible for every misdeed of the Saluda nurses. There still has to be a policy. It applies when the contractor is delegated the authority to make policy on behalf of the county and a policy is a moving force in the unconstitutional conduct of the contractors employees. So you still have the policy. It's not a respondeat superior theory because it does not based upon employer employee relationship. No one is saying that Midland County is automatically liable because the employees of Saluda committed misdeeds. There still has to be a policy but it's that policy when the policy when there's evidence of a custom with a force of policy that can be attributable to Saluda it's not only Saluda that's liable the contractor is liable but the county retains joint liability because it retains the duty to provide health care services and it's attempting to perform that duty by having somebody else do it for them. In this case it was about the cafeteria. I'm sorry let's assume this is the prison cafeteria or the jail cafeteria you know and they hire a food services company to do that and they say you decide the policies of what's nutritious and follows the health guidelines etc for the prisoners. Is that would that be non-delegable duty and so they would be on the hook for if there's something in the policy that people don't get their kosher meals or have celiac disease or well yes if if there was a policy if you could show that there was a policy for example of providing a spoiled food to the detainees and they contracted out that to a third party then the county would remain liable for the constitutional violations that for which the policy was a moving force. So if you can show that there was a policy or a custom that developed and that it was a moving force in the constitutional violations in that cafeteria example then yes it would apply. But the same as as any other misdeed constitutional violation by the county itself or or a contractor where they attempt to delegate policymaking to the contractor. How come we're just learning about this now? Well you're not. One of the things that I would would like to point out that the Ancotta case which was a seminal case was decided way back in 1985 and actually decided before the West versus Atkins Supreme Court case and West versus Atkins was the case in which the Supreme Court decided that the determination it relied on the Ancotta decision and used the Ancotta rationale in reaching that determination. The Supreme Court said contracting out prison medical care does not relieve the state of its constitutional duty to provide adequate medical treatment to those in its custody and it doesn't deprive state prisoners of their right to vindicate their constitutional rights. It went on to say the state bore an affirmative obligation to provide adequate medical care to West. The state delegated that function to respondent Atkins and the respondent voluntarily assumed that obligation by contract. Now why the Supreme Court and West didn't reach the issue of whether the county would remain liable in that instance it logically follows that it would from the Supreme Court recognized the non-delegable duty of the county and said that the prisoners wouldn't lose their right to vindicate their violation of their constitutional rights and that's exactly what the Sixth Circuit concluded independently of the Ancotta decision in Leach versus Shelby County when it looked at the West versus Atkins decision and said that given the Supreme Court's reasoning it logically follows that the county is going to remain liable for the contractor policies. Has this theory been used in any of the cases where there's an argument that the people with the private prisons and that sort of thing that the prisons are delegating to them maybe and they use physical punishment or something in a way that's inconsistent with the government power or they do things like that has this theory been used in those context? Well I'm not familiar with the case the five cases five cases that I'm familiar with are the three times a circuit court. You were going to say something about a Seventh Circuit case. Yes the Seventh Circuit case is a King versus Kramer that's cited in the briefing. I'm familiar with those three cases and the two district court cases. In the context of a private prison I'm not familiar with the case but I can very easily see that it would arise there if the if the county is contesting that it is jointly liable. Here we have a very odious policy. The practice or custom developed among the saluted nurses probably impacted by an understaffing issue simply to wholesale abandon the use of tools that have to determine the diagnostic condition of the patient and they records wholesale. The Texas Rangers investigation in this case of the fabricated data on the SVN treatment flow sheet showed in addition to the fabricated information that in many cases in fact the majority of cases was Savion Hall that the contractor wasn't recording the interactions at all. So we have 43 visits that were totally undocumented and then some 80 entries over 80 entries by six nurses over the course of three weeks on 21 occasions where oxygen saturation levels and bronchial breath sounds were wholly fabricated because no instrument was used to make those determinations and you have to have a stethoscope for the bronchial breath sounds or O2 meter to determine the oxygen saturation level. The consequences of that policy of that custom is is obvious. It's like putting a bullet firing a bullet in slow motion it's going to end up hitting somebody. Detainees are not going to get the medical care that they're they need if you're making up medical records it's an extraordinarily egregious policy and somebody's going to get hit with that Do you have and I know we're not we're on a motion to dismiss is there evidence that this was for other people other than your client? Well it because I know they say that well it's one incident it's a bunch of incidents but it's about your person. We have we know of one victim I think is the answer answer your question it's not a typical pattern case where we know about multiple victims it's one of the reasons we need discovery on the Monell claim but neither is it a typical single incident case where it all happened in a few seconds or one minute or one day. As you noted it happened on 21 occasions over the course of three weeks by six separate actors and it's just not I would submit a reasonable inference that it all started with the SVN treatment flow that justifies human experience it happened too often the it was too casual it was too pervasive to believe that that the six nurses got together and said we're going to fabricate just the information on just this one medical record. If it was one rogue nurse you wouldn't be arguing this? If it is one rogue nurse it would be very difficult to argue it. You wouldn't have the grand staff type pattern where you have multiple actors acting all at the same time which is a demonstration that they're not acting anecdotally they're acting as a result of a custom or policy that is the way things are ordinarily done. That's the being occur this is occurring over the course of three weeks. You've just it would just be defy human experience to believe that it began it ended with Savion Hall. The more reasonable inference is we discovered it was Savion Hall because this was the time when somebody died and that's just what outed the policy. And what is going on with the rest of the case so this is the only as the Saluda and Adesomi and Estrada etc. What is the status of that? Is that ongoing or is that? No we we settled. Those are all resolved. All the other claims are resolved and that's why this is right. That's why this is important because Midland County continues to say they're not responsible for the for the policies of Saluda. But other surrogates would hold that they are and we invite this circuit to join suit. The defendants invite a circuit split with having you adopt the district courts analysis that this that our Monell theory is some sort of warmed over responding out superior theory. It's not. It relies upon a delegation theory and with respect to whether we sufficiently pleaded delegation of policy to Midland County. A close reading of the appellant the appellee's brief shows that that's not even a disputed issue here. They say the exact same thing on page four of their brief that we say that Midland County took the lead in developing health care policy. So this is not a case where Midland County is even disputing that they that they tried to delegate policymaking to their contractor. But we allege much more than that. At page 77 of the record which is our paragraph 115 we specifically say that that it was Saluda that developed and maintained the Midland County Jail health care policies and procedures manual. So it was literally Saluda that wrote the book on policies for Midland County with respect to its jail. And it was that sort of allegation that Judge Fitzwater in the second Rodriguez opinion found was adequate to plead an attempted delegation theory. I have a unless there are additional questions on the Monel theory let me just jump to spend a minute on Mr. Stickel. Mr. Stickel actually made a deliberate decision to allow Saving Hall to get worse because he failed to break with the standard course of treatment. But you would have to show that that was unreasonable for him to not to depart from the standard course of treatment. Well he your honor I see it just a little bit differently. The standard course of treatment referred to somebody who wasn't in distress. Somebody who wasn't at his desk appearing to about to pass out not being able to stand up saying that he didn't think he was going to make it. Mr. Stickle never reported those facts. What he was actually observing to medical and asked medical about what do I do in that situation because we know that once they were informed at seven o'clock at the end of his shift then they took him not withstanding this this arbitrary four-hour thing that Mr. Stickel is trying to talk about after the fact in his reports. So they did break with the standard of care because Mr. Hall was in extreme distress and all the hand-wringing. Your initial time has expired. Thank you. Yes. Mr. Thomas and you've saved some time for rebuttal. Thank you. May it please the court. Lane Rouse on behalf of the appellees Midland County and Daniel Stickle. Contrary to what the appellants argue the appellees are not asking for a circuit split. In fact I think the facts as alleged in the complaint are completely distinguishable from those cases that are relied upon by the appellants. The appellees are asking for this court to affirm the lower courts ruling for two reasons. One the appellants have failed to show any county action or notice of the county anything to link the Saluda nurses actions back to the county and that's why the county should not be held responsible in this case and then as to Daniel Stickle. Contrary to the standard that the appellants must show that Daniel Stickle demonstrated conscious indifference or a deliberate indifference to a serious medical need. The facts alleged actually show that he showed care towards Hall's condition. So are you recognizing that this non-delegation theory as opposed to respondeat superior exist as a matter of law? I think what it's water and numerous and a couple of other circuits have said. I think what we're saying your honor is it really doesn't matter for purposes of this case. No one's disputing that the county owes a duty to provide medical care to inmates. The issue is is it county action or county policy that's the thing that's actually driving the alleged constitutional violation. We I look at the Kent case which is one of the district court cases that's relied upon by the appellants in this case. There you had a policy that was actually inside the contract that Collin County entered with the third party medical provider that stated as the goal was to reduce the number of emergency care visits that the inmates would have while they were in custody. That was the stated policy the stated goal and then Collin County gave authority to the third-party medical provider to figure out how to implement that and it was the allegations of how the third-party contractor implemented that that led to the alleged constitutional violation in that case. Do they have did they get the discovery that would give them all of the emails and you know quit having so many visits and we need to keep the cost down? Did they do they have access to all of that information at this time? They had my understanding your honor well first of all there was no significant discovery in this case because it was resolved. I don't know whether there are those discussions going on I mean it would have to be explicitly in the posted policy on the internet or something that we're gonna keep costs down and minimize extra visits and anything you can do to help in that is part of our why we're hiring you to be our independent contractor. It would be in the contract which it would have to be on the in the contract itself do not go visit to save money? To make it analogous to the Kent case I believe it would be your honor because that was the notice that the county had and the action of the county. Wouldn't they be allowed to have some discovery as to whether there is in fact a policy of this given the fact that there are over 60 incidents where this occurred? Well with respect to the incidents that have been of a public record and the allegations actually cite to that contract within the complaint so it's not for a lack of information that that they don't have access to the contract for instance but it is for it is that they simply didn't show that the contract in this case actually contain the policy or really that anything we can broaden it because it doesn't have to be in the written policy does it from O'Neill liability could be a custom that was revealed through discovery and the idea is that we've got so many incidents that it can't just be rogue people it must be the custom in practice and so why don't they get a chance to test that? Well and I think there's two responses that one is that I do not believe that a discovery is part of the briefing of a lack of discovery or a reason that they don't have discovery is why they need this the district court's order to be reversed so I think that goes beyond what's what's being discussed for the second reason with respect to a custom policy that goes right into the similar prior in similar prior incidents that would have put the county on notice such that that the county would be aware that this in fact was going on they can't deny that it was going on and they didn't do anything about it but what we have here is one incident and when I'm that be one incident when it's really 60 incidents over three weeks I don't understand your argument in that regard at all. Yes your honor the 60 incidents that we're talking about are the 60 times or about the 60 times that Mr. Hall went to medical to receive treatment to receive the treatment there are no allegations that the county was aware that during these times that Mr. Hall was presenting to receive medical that medical was doing what it was purporting to say that it was going to do the contract was to provide medical services that's the allegation the contract was not to falsify medical records which is the alleged constitutional violation and that's the distinguishing issue here. The contract would have to say on its face and we want you to falsify medical records that pretend you're giving treatment and it would have to say that on its face in order to survive a motion to dismiss. I think it would have to say something in order to implicate the county so the county is aware that its actions are in fact leading to what ends up being the falsification of medical records. What we have here is it's with respect to to draw an analogy from a conditions kind of a case where we're discussing what are the conditions and did the conditions of this detention center lead to the alleged constitutional violation. The distinguishing factor a lot of times that courts are looking at is it's a is it a truly a condition or is it merely a decision made by that of the the officer or whoever is involved. So many officers over so much time why doesn't that if it was one person on one time then this is an easy case but it's not so why when would it become enough if it was 90 times and 12 people but six and 60 times is not enough or you think it's never enough unless there's multiple victims and they already know about that before there's been discovery. It's it's not necessarily about the victims it's about notice to the county. The county has to have some kind of notice that this is in fact going on and we can't jump that gap over notice just by an in this case so therefore it must be the must be the policy that's a grand staff kind of argument that is being made and pushed in this case to expand respond it's superior to implicate the county for something that there's no allegations that the county ever had notice saying that it's responding at superior they're saying because they had a non-delegable duty they needed to keep up with what was going on. That's separate than oh they didn't know and no one told them and they didn't know to investigate. It's that they had an ongoing duty to monitor and to keep up ahead of time. There's always going to be a duty to provide medical care but I believe it stretches reason to say that that duty incurs or includes auditing the trained nurses that they're actually performing the professional care duties that they're supposed to do in every single case. Don't they do an audit annually at least or something? I would assume if you hire a bunch of independent contractors to run major important parts of your your prison system jail system that you would do an audit of how the contractors are performing and whether there are complaints and deaths and all of that sort of thing. That would be a responsible person who's hired all these independent contractors. And what your honor is pointing out to are issues such as other deaths or other incidents that the county would then be aware of that would put them on notice that there needs to be a change and a failure to do so would be an adoption. Was there an audit here? There's no allegations of an audit and so that's something that's just beyond beyond the record and not something that's part of the part of the complaint. Wouldn't you have to come forward and say oh and we audited this and there was no we didn't have any news so we didn't violate our non-delegate because we were doing our part. Wouldn't that be on you if it's the non-delegable duty versus the respondeat superior? Well at this stage it's the burden of the appellant to allege the facts. Well they do allege it though. They allege the facts. They have alleged that you you had this duty and that you must not have done it because of the many many failures and then you would say no we audited it 25 times and it's we've never had a problem with this company and no we checked on them before we even hired them and they were terrific. Gold standard in the industry. Well I believe what the allegations show is that Midland County did do its due diligence as far as retaining a medical care provider. They didn't go out and retain a layperson to come in and provide medical care. Each one within the allegations each of these nurses they've all been trained. They're all licensed. They're all certified. There's an overseeing physician that is overseeing all this. That is part and parcel with the duty to provide medical care. The issue in this case is the nurses didn't do what they knew they were supposed to do when they were interviewed and talking about what is the standard? What are you supposed to do? What they said that they were supposed to do was not what violated the constitutional rights. What they talked about was we have to monitor before. We have to check the oxygen levels. We have to check the breathing the breathing of the inmate. We apply the treatment and then afterwards we recheck and then and then we document. That was what they said. They allegedly did not do that and for the county to have notice there must be to get to a custom of practice something in the past to put them on notice even if we're talking about within halls treatment. Something where the county had noticed that this was in fact going on and that's simply absent from the allegations. Isn't that the same thing as respondeat superior? Excuse me your honor? That sounds exactly like respondeat superior which you've just described. That they had to have noticed that it was going on. That's the traditional theory that we're all used to. That's what you just explained. And because that that is the claim. Well actually they say it's this other claim that's non-delegable duty which is not the same as respondeat superior. And you don't but you're analyzing it into respondeat superior. Well the non that in each of the non-delegable duty cases of the county still have notice. Whether it was a policy that was expressly written within the contract itself. Whether it was prior notice of similar prior events coupled with the policies that were in the contract. Those are the types of facts that are necessary before we can even discuss this. The non what the non-delegable duty is saying is the county just can't stand up and say oh look I've got a contract. It's a shield to liability. But that's not what's going on here. What's going on here is there's a failure to allege any facts that would have put the county on notice that these kinds of actions are in fact going on. And that's the distinguishing fact. And that's why if Rangers say was the reason that they had this failure over a significant period of time. Can you restate the question. What did the Texas Rangers say was the reason that they had this failure over a significant period of time. When the Texas Rangers did its investigation which I assume is part of this record because everybody's been referring to. It's it's part of the complaint your honor. The Midland County turned this turn this incident over to the Texas Rangers to fully investigate. What did they say was the reason that they had this failure over a long period of time. Well what their conclusion was is it was the nurses essentially criminally deciding not to. Just on their own they got in a group and said we're gonna quit doing our job completely and just hang out and forge things. Well the timing of when they were going to turn this around is not stated within the complaint. But the conclusion of the Rangers was that this was the nurses decision. There was no indication in anywhere in the complaint that this was somehow tied to something that the county did. Which I think is probably important. Are these all same level nurses. Was there a ring leader. What was. These were all RNs. The way the allegations read is they're all the same level and being overseen by the by the treating physician that comes in. And the treating physician was completely in the dark. According to the allegations the treating physician was in the dark and was not aware of what was going on until he sat down and watched the videos along with Texas Rangers and noted that it did not appear that the nurses were doing what they were supposed to do actually checking the oxygen levels. And he could not see where they would have obtained the information to write down answers on the breathing treatment. Did Midland County keep access to all the videos at all times or was it the system for the videos only available to the. The allegations don't really go into details over over how those videos are kept and maintained. So I would be going beyond the record which is again something that would be on the appellant's burden. It's the appellant's burden to link up the connection between the county and these actions. There's mention of video evidence but there's no development within the allegations which are very lengthy. I mean this is a hundred page complaint that that they have heard that they that they filed and in this case it was based upon the Texas Rangers report after extensive public record searching. There is a lot of information that the appellants had to go off of and you still don't see a connection between where does the county where is the county responsible for what these nurses are doing. It's just not there. It is absent. With I've got about four minutes left I can address some of the Daniel Stickle arguments unless the court has additional questions with respect to the county. With respect to Daniel Stickle the allegations show care towards Mr. Hall. There were multiple times that Hall received treatment during the time that Daniel Stickle was what was in shift and we need to keep in context of where Daniel Daniel Stickle falls within Hall's treatment. Daniel Stickle had come on for one shift, a night shift. This was the last six hours that Hall was actually in the in the detention center and this is over a three-week course of treatment. Mr. Hall allegedly comes to Daniel Stickle at about 1230 to report some issues and then again at 615. Each time you don't see Daniel Stickle ignore what you see is Daniel Stickle respond. He responds by calling special housing, by requesting to see if it's time or if Mr. Hall can in fact go back and have an additional assessment. You see Daniel Stickle confirming that he's going to keep a watch over Hall and he does. He watches Hall closely during the interim times between these treatments. You see Daniel Stickle confirmed that Hall still has access to his inhaler, to his medications. These are all indications of concern. Even some of the statements that Daniel Stickle made after the fact when he's writing his reports down about talking about not being sure of what he should do or whether he should do more. Again that's indicative of someone who cares, not of someone who does not care. That would satisfy the conscious indifference standard. Daniel Stickle is also the one that when the incoming officer who was going to relieve him of the shift comes in and requests when there's a change outgoing, it's Daniel Stickle that informs the officer, hey Mr. Hall I want to inform you of the condition, how many treatments that he has been going through and then the decision is made to go ahead and call medical at that point in time and Mr. Stickle does and that's what got Hall back to medical at 7 when the doctor happened to be there who the and then that's what eventually got Hall to the emergency care that the appellants state Stickle should have provided earlier. With respect to whether Daniel Stickle could have known or should have been aware that there was an issue with respect to Hall's condition, again the allegations undermine that Hall should have been aware of any more than what he was. Even when Hall returns to medical at 7 o'clock, allegedly in dire straits, the treating physician doesn't immediately recognize, oh we don't need to do an assessment, we need to get ER here now. Instead he does an assessment according to according to the complaint. It's only after doing the assessment that that Mr. Hall then goes to the to the emergency care. So the allegations think firmly demonstrate that there was no deliberate indifference on behalf of Daniel Stickle and then as we've previously discussed the missing piece with respect to the county is any kind of notice or any kind of action that can implicate the county as opposed to merely holding the county responsible for the actions of the Saluda nurses. The allegations are absent of any sort of ratification or approval what the Saluda nurse has done. Appreciate your time, your honor. Thank you, Mr. Rouse. Mr. Thomas for rebuttal. Counselor Flappalee, I think confuses two separate issues, delegation and policy. The contract shows that policymaking is delegated to the third party. Once that occurs then the county remains liable for that policymaking by the third party because the county is the one that has the non-delegable duty to be sure that they're doing that they're performing their job. It is no answer. Well let me read from Ancada. Notice that assumes that we decide for the first time ever to adopt the non-delegation. That does that does assume that and that's that's what the the two district courts assumed you would and and and and of course I don't take that for granted but I but there's significant reason to do so on the basis of the reasoning of the circuit decisions and the reasoning of the Supreme Court in West because what I was about to point out that if if Midland County can just say well we're going to contract out our health care policy to a third party and then turn a blind eye to what they did and we don't know what what they they they're doing then you're doing exactly what the liability and you can't contract out the policy making and then not be liable for your your your legal theory as I understand it is that under West versus Atkins that's been obvious for 30 or 40 years but all of the hundreds of panels on this court that have considered similar cases have just ignored that or issued opinions just in the face of it. Of course somebody's got to raise it it's been raised in the third in the in the sixth seventh and eleventh circuits has been raised in those circuits for a long time and the 11th circuit just issued a new opinion recently following what it did back in the 80s in Ancada. So we raise it here that is held to the contrary. Nobody has held to the contrary split is what you said so I'm just confirming that you are not aware of any circuit who's ever held to the contrary. No no I'm not the only three circuits that I'm aware that have directly addressed it were the three that we cite and what I said the circuit split would be if this court went in the other direction. Yes so no panel of no court has ever even said we've never recognized it or we declined to recognize it it's never even been mentioned in a Fifth Circuit opinion. Non-delegable duty doctrine not that I have found and that's that's what the District Court concluded in the in the Denton County case that we cite that it said the Fifth Circuit apparently has not addressed this issue but we're the non-delegable doc non-delegable duty doctrine would be adopted. With respect to Mr. Stickel I'd like to point out that the the the appellees seem to think it's very important to press this theory that allegedly Dr. Willingham didn't recognize there was emergency and he delayed in calling EMS but there's no facts alleged that support that that's just as much made up in whole cloth as the nurses entries on on Mr. Hall's records. We do not allege that and that's not in the complaint so I ask that this case be submitted. Thank you Mr. Thomas your case is under submission. Remaining case for today Harper versus McAndrews.